IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL HUFTILE,

    Petitioner,                         No. CIV S-05-0174 GEB DAD P

   vs.

MELVIN HUNTER, et al.,

    Respondents.                   FINDINGS & RECOMMENDATIONS

                           /

          Petitioner is a former state prisoner subsequently confined to a psychiatric hospital pursuant to a civil commitment. He is proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is proceeding on the amended petition filed March 15, 2005. Petitioner challenges a November 1, 2002 finding by the Sacramento County Superior Court that he was a sexually violent predator pursuant to § 6600 of the California Welfare and Institutions Code, and a resultant commitment to Atascadero State Hospital for two years. He seeks relief on the grounds that: (1) the evidence was insufficient to support the jury's finding that he was a sexually violent predator; and (2) the trial court violated his right to due process when it excluded evidence that he was subject to an outstanding arrest warrant for completion of a criminal sentence in another state. Upon careful consideration of the record and

/////

1

the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## PROCEDURAL BACKGROUND

In 1984, petitioner was convicted of second degree rape in South Dakota. (Clerk's Transcript on Appeal (CT) at 55.) On or about July 12, 1995, petitioner was convicted in the Sacramento County Superior Court of four counts of sexually violent offenses within the meaning of California Welfare & Institutions Code § 6600(b) and was subsequently committed to the California Department of Corrections to serve a determinate sentence of twelve years. (Id. at 25.) On April 2, 2001, the Sacramento County District Attorney filed a civil commitment petition against petitioner pursuant to California Welfare & Institutions Code § 6600, et seq. (Id. at 25-29.) Consequently, on October 21, 2002, a jury trial was commenced to determine whether petitioner was a sexually violent predator who required civil commitment. (Id. at 65.) On November 1, 2002, the jury found beyond a reasonable doubt that petitioner was a sexually violent predator likely to engage in sexually violent criminal behavior against others. (Id. at 143-46.) On that same date the Sacramento County Superior Court entered an order committing petitioner to the Department of Mental Health for a period of two years. (Id. at 147.)[1]

/////

---

[1] This court has independently verified that petitioner is still a patient at Atascadero State Hospital, although he has been transferred to its facility in Coalinga, California. There is no evidence that petitioner voluntarily recommitted himself. It therefore appears that he has been re-committed to at least one subsequent term. Because petitioner's current term of commitment to a state psychiatric hospital is directly traceable to his initial term of commitment, he has standing to challenge his November 1, 2002 commitment. Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1142 (9th Cir. 2005). Cf. Jackson v. California Department of Mental Health, 399 F.3d 1069 (9th Cir. 2005) (petitioner lacked standing to challenge his initial term of commitment where he was in custody pursuant to a voluntary recommitment when his petition was filed). In addition, even if petitioner had been released from his civil commitment, the instant case would not be moot because, having been found to be a sexually violent predator, he is subject to incarceration for up to a year if he fails to verify his residence and employment record every ninety days, and a judgment in his favor on the instant claims could relieve him from these reporting requirements. Carty v. Nelson, 426 F.3d 1064, 1071, amended, 431 F.3d 1185 (9th Cir. 2005) (Sexually Violent Predator Act (SVPA) verification requirement found to involve a concrete and continuing injury sufficient to satisfy Article III's case or controversy requirement.

On November 5, 2002, counsel filed a notice of appeal on petitioner's behalf. (Id. at 148.) The California Court of Appeal for the Third Appellate District affirmed the judgment against petitioner on September 8, 2004. (Am. Pet., Ex. A.) Petitioner subsequently filed a petition for review in the California Supreme Court, which was summarily denied by order dated December 1, 2004. (Am. Pet., Ex. C.)

FACTUAL BACKGROUND[2]

> At the time of trial, defendant was a 53-year-old male with a history of child molestation offenses dating back to before 1984. Defendant's attraction to prepubescent girls began when he was a teenager. While in the military, defendant sexually fondled two girls in a day care center where he worked as a volunteer.
>
> Defendant later married and moved to Texas with his wife and two children. He became a "house husband" and took care of his children as well as others in the area. He became sexually involved with some of the girls in his care. Defendant and his family moved to another area of Texas where he again became sexually involved with some girls he was babysitting.
>
> Defendant and his wife eventually moved to South Dakota where they got divorced. In South Dakota, defendant met E., the single mother of two children, C. and F. Soon after defendant began dating E., he initiated a relationship with C., who was seven to nine years old at the time. The relationship began by defendant wrestling with C. and moved on to nudity and sexual touching. Defendant and C. engaged in mutual masturbation and mutual oral copulation. Defendant also digitally penetrated C.'s vagina. Defendant sexually touched F. as well. Defendant believed the girls were being sexually provocative toward him. Defendant later married E. and adopted C. At some point, defendant began molesting friends of C. and F. There were a total of nine girls involved. The molestations continued for two to three years.
>
> In 1984, defendant was convicted of raping C. and was sentenced to seven years in South Dakota state prison. However, the sentence was suspended and he served only one year. After two years in a

---

[2] The following factual summary is drawn from the September 8, 2004 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), filed as Exhibit A to the amended petition, at pgs 1-4. This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has not attempted to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

3

halfway facility in South Dakota, defendant moved to Sacramento, California.

In 1990, defendant's parole agent discovered that he was living in an apartment complex where young children also lived and that defendant had spoken with some of the young girls. The parole agent directed defendant to move.

Defendant met a woman at his place of employment who also played on a softball team with him. Defendant falsely informed the woman that his wife and three daughters had been killed in an automobile accident. The woman allowed defendant to spend time with her daughter. Between 1991 and 1993, when the woman's daughter was seven to nine years old, defendant had a relationship with the daughter similar to the one he had with C. in South Dakota. He fondled her vagina and nipples and made genital-to-genital contact with her.

On July 12, 1995, defendant was convicted on a no contest plea of four counts of lewd and lascivious conduct with a child under the age of 14 and was sentenced to 12 years in state prison. He was scheduled for parole on April 20, 2001.

On April 3, 2001, the People filed a petition for commitment of defendant as an SVP. On April 30, the court found probable cause to hold defendant after his parole date.

Jury trial began on October 21, 2002. Drs. Jack Vognsen and L.C. Miccio-Fonseca testified for the People. Both opined that defendant suffers from pedophilia and meets the criteria for an SVP. Dr. Theodore Donaldson testified for the defense and opined that while defendant may be a pedophile, he does not meet the criteria of an SVP.

The jury found the allegations of the petition to be true, and defendant was committed to the Department of Mental Health for a period of two years.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

Hubbart v. Knapp, 379 F.3d 773, 779 (9th Cir. 2004) ("The question before us is not whether the state court of appeal applied an overbroad interpretation of the SVPA [], but whether that court's interpretation and application of the SVPA in this case violates federal due process."); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Carty v. Nelson, 426 F.3d 1064, 1071-73, amended, 431 F.3d 1185 (9th Cir. 2005) (applying this standard in a habeas challenge to a civil commitment under the SVPA); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached

5

the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims

    A. Insufficient Evidence

Petitioner's first claim is that the evidence was insufficient to support the jury's finding that he was a sexually violent predator. He argues that "the experts' Static-99 scoring put him at the lowest category of risk possible under the SVP Act; his age reduced the risk further; and there was no proven validity to the methodology used by the prosecution experts to increase the risk beyond the Static-99 scoring."[3] (Am. Pet. at i.) Respondent counters that petitioner's Static-99 score provided sufficient evidence to support the jury's finding that he was a sexually violent predator but that, regardless of petitioner's score, his history of predatory molestations, combined with his "deviant sexual preferences" and personality disorder provided sufficient evidence that petitioner was a danger to society and should be committed to a psychiatric hospital. (Answer at 16.)

/////

/////

---

[3] As one California Court of Appeal has explained:

> The Static-99 test is an actuarial instrument that allows an evaluator to place sexual offenders in different risk categories based on historical (static) factors such as age, marital status, the number of prior offenses, the relationship of the offender to the victims and the gender of the victims. After identifying the particular characteristics of the offender, the Static-99 test assigns a numeric score to them. The total score of the test is a percentage chance of the defendant's likelihood of being convicted for a future sexual offense.

People v. Therrian, 113 Cal. App. 4th 609, 612 (2003).

6

1. <u>State Court Opinion</u>

The California Court of Appeal rejected petitioner's arguments and concluded that his commitment was proper. The court reasoned as follows:

> The Sexually Violent Predators Act (SVPA) "permits the involuntary civil commitment, or recommitment, for two-year terms of confinement and treatment, of persons who are found ... beyond a reasonable doubt (§ 6603, subd. (a)), to be 'sexually violent predator[s]' (§ 6604). The Act defines a sexually violent predator as one 'who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a)(1).) A '"[d]iagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' (<u>Id.</u>, subd. (c).)" (<u>People v. Williams</u> (2003) 31 Cal.4th 757, 764.)
>
> Defendant does not contest that he has been convicted of a sexually violent offense against two or more victims. He challenges the jury's finding that he is likely to reoffend. Defendant contends that, because of his age and, based on the fact he has been convicted only twice, a dearth of prior offenses, the likelihood of him reoffending is at most nine percent, which "never achieves the level of certainty implied in the requirement that the prosecution show a 'serious, well-founded risk' of reoffense." Defendant argues the Legislature never intended "the net to be cast so broadly that it cuts off individual liberty using these kinds of odds." According to defendant, the evidence here is so insufficient that his recommitment violates his state and federal constitutional rights of due process.
>
> In <u>People v. Roberge</u> (2003) 29 Cal.4th 979, the state high court concluded the requirement that the convicted sex offender is likely to engage in sexually violent predatory conduct if released "is met when 'the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.'" (<u>Id.</u> at p. 982, quoting from <u>People v. Superior Court (Ghilotti)</u> (2002) 27 Cal.4th 888, 922.) This does not require a finding that it is more likely than not the person will reoffend. (<u>People v. Superior Court (Ghilotti)</u>, supra, at p. 916.) Whether a person poses a "danger to the health and safety of others" (§ 6600, subd. (a)) "does not, by common understanding, evaporate with an expert's prediction that the sufferer's risk of reoffense is no greater than 50 percent." (<u>People v. Superior Court (Ghilotti)</u>, supra, at p. 920.) However, a finding of such danger

1   requires "much more than the mere possibility that the person will reoffend." ( Id. at p. 922.)

2   Drs. Jack Vognsen and L.C. Miccio-Fonseca testified for the People and concluded that defendant meets the requirements of the SVPA. Both doctors used the Static-99 test as a starting point for their evaluation. Both gave defendant a score of three on the test, two for his prior offenses and one for the fact the victims were not related to him. They also considered other factors relative to defendant that are not reflected in the test.

Defendant contends the opinions of the People's experts are not credible. Defendant argues Dr. Vognsen's predicted likelihood of reoffense of 25 to 30 percent was based on a span of 15 years using a Static-99 score of three. According to defendant, Dr. Vognsen should have used a score of two, because defendant was only convicted of one offense in South Dakota, and should not have used 15 years, because the rate of offense decreases over time for someone defendant's age. As for Dr. Miccio-Fonseca, defendant argues she refused to quantify the likelihood of defendant reoffending and, therefore, provided no basis on which the jury could assess the seriousness of the risk posed by defendant. Further, as with Dr. Vognsen, Dr. Miccio-Fonseca "based her prediction on an escalating rate of reoffense over a fifteen year period." According to defendant, the rates used to predict if defendant is likely to reoffend are "fundamentally flawed" when applied to a 53-year-old "whose rate of recidivism is declining."

Defendant misconstrues the evidence. For a score of two, the Static-99 test provides average rates of recidivism of nine for five years, 13 for 10 years, and 16 for 15 years. These numbers do not reflect an "escalating rate of reoffense," as defendant suggests, but a declining rate. They predict that during the first five years, the rate of reoffense is nine percent. This means that nine out of 100 of those with a score of two will reoffend within five years of release. A reoffense rate of 13 for the first 10 years, means that only an additional four individuals will reoffend between the fifth and tenth years following release. A reoffense rate of 16 for the first 15 years means that three more individuals will reoffend between the tenth and fifteenth years following release. Thus, as we get further away from defendant's release, and as defendant gets correspondingly older, the instantaneous likelihood of a new offense decreases. As for the test score, Dr. Vognsen testified that the rates of recidivism for a score of two or three on the Static-99 test are relatively the same.

Furthermore, both Dr. Vognsen and Dr. Miccio-Fonseca testified that the Static-99 score is only a starting point. Dr. Vognsen explained that, although the Static-99 score for defendant is relatively low, the score does not "tell [ ] the whole story." According to Dr. Vognsen, the Static-99 score predicts

8

reconviction, and does not take into consideration the many other offenses committed by defendant that were not charged and the many other victims of his predatory acts. According to Dr. Vognsen, one expert has suggested that the Static-99 score might be doubled to cover the likelihood of reoffense rather than reconviction.

Dr. Vognsen acknowledged that the Static-99 test over predicts, by including the likelihood of committing offenses other than sexually violent predatory offenses. Nevertheless, he reached his conclusion that defendant is likely to reoffend based on the fact that defendant has continued to commit sexually predatory offenses despite having been sanctioned by police questioning, divorce, and incarceration. Dr. Vognsen was also persuaded by the fact that defendant continued to commit offenses while carrying on a relationship with an adult, thus showing his strong preference for children.

Dr. Miccio-Fonseca testified that the Static-99 test was not a major part of her risk assessment. She explained that she relied in part on defendant's uncharged offenses and the fact that he reoffended despite having been incarcerated. She also considered the fact that defendant tended to rationalize his behavior by explaining that the victims derived sexual pleasure from the molestations. Dr. Miccio-Fonseca testified that she considered another test, the SVR-20, in her evaluation. This test considers 20 factors which, in defendant's case, included multiple victims, the age range of the victims, the type of relationships defendant established with the victims, defendant's prior conviction and punishment followed by continued offenses, the span of time of the offenses, defendant's admission that he has a problem with little girls and the fact that defendant ingratiated himself with adults in order to get at their children. She also noted that defendant threatened to harm E.'s children and has never affirmatively sought treatment.

In support of his claim that the evidence is insufficient, defendant points to his testimony that he has been celibate for 20 years and is confident that he will never reoffend against young girls. He also relies on his expert, Dr. Theodore Donaldson, who testified that the most appropriate estimate of defendant's risk of reoffense should be based on his age, not Static-99 or the other factors considered by the People's experts. Dr. Donaldson predicted defendant's likelihood of reoffense to be under 10 percent.

Defendant's claim of celibacy is, of course, belied by his conviction of four counts of molestation in 1995. Given defendant's history of offenses, the jury was free to reject his self-serving claim that he would never reoffend. As to Dr. Donaldson's opinion that age should be the basis for predicting recidivism in defendant's case, we need only look at the fact that defendant continued to offend well into his forties. Dr. Vognsen testified that recidivism rates

9

> begin to drop at age 50 but age does not become a substantial factor until age 60. Defendant was 53 at the time of trial.
>
> When a defendant challenges the sufficiency of the evidence, "this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must "'be of ponderable legal significance ... reasonable in nature, credible and of solid value.'" (People v. Mercer (1999) 70 Cal.App.4th 463, 466.) In reviewing the record to determine the sufficiency of the evidence, we do not "reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment." (People v. Poe (1999) 74 Cal.App.4th 826, 830.) Although an SVP proceeding is civil in nature, proof that the defendant is an SVP must be beyond a reasonable doubt. (§ 6603, subd. (a); People v. Mercer, supra, 70 Cal.App.4th at pp. 465-466.)
>
> While we recognize that defendant's age and relatively low score on the Static-99 test suggest his likelihood of reoffending is not high, the expert testimony presented by the People and the supporting evidence was sufficient to sustain the jury's verdict. The experts considered all relevant factors and provided a reasoned basis for their conclusions. The factors considered by them are supported by the evidence. Based on the totality of the record, there is sufficient evidence to prove beyond a reasonable doubt that defendant is an SVP.

(Opinion at 4-10.)

        2. <u>Applicable Law</u>

The United States Supreme Court has held that in criminal prosecutions, the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). Accordingly, there is sufficient evidence to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). In the context of civil commitment proceedings in general, the United States Supreme Court has held that, "to meet due process demands," the standard of proof must be higher than the preponderance-of-the-evidence standard but may be lower than the beyond a reasonable doubt standard. <u>Addington v. Texas</u>, 441 U.S.

10

418, 430-33 (1979). However, the Supreme Court has not specifically addressed the standard of proof required to support a civil commitment under a state's Sexually Violent Predator Act.[4]

In California, "proof that the defendant is an SVP must be beyond a reasonable doubt." (Opinion at 4) (citing Cal. Welf. & Inst. Code § 6603(a)). See also Carty, 426 F.3d at 1066-68 (summarizing California's Sexually Violent Predators Act and noting that under that Act "[t]he court or jury shall determine whether, beyond a reasonable doubt, the prisoner is a sexually violent predator" and that any such jury verdict must be unanimous); Hubbart, 379 F.3d at 781. This requirement "is met when 'the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.'" (Opinion at 5.) See also People v. Superior Court (Ghilotti), 27 Cal. 4th 888, 894-96 (2002). California law does not require a more than 50% likelihood of new criminal sexual violence if the person is freed but does require much more than the mere possibility that the person will reoffend. (Id.) (citing Ghilotti, 27 Cal. 4th at 916). California law in this respect therefore applies a more stringent burden of proof for an SVP civil commitment than that required to comply with due process under clearly established federal law. See Pritchett v. Hunter, No. C 05-0764 PJH (PR), 2008 WL 4183932, *14 (N.D. Cal. Sept. 9, 2008) (rejecting a petitioner's claim that the state trial court applied a standard of proof in a SVPA civil commitment proceeding that violated due process and finding the state courts' denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law).

3. Analysis

Respondent argues that United States Supreme Court authority does not require a standard of proof beyond a reasonable doubt in civil commitment proceedings. (Answer at 17.) Respondent contends that the standard of proof required for the SVP determination under

---

[4] Citing the decision in Addington, the Ninth Circuit has concluded in one case that due process was satisfied where the petitioner was adjudged in state court, beyond a reasonable doubt, as a sexually violent predator who required civil commitment. Carty, 426 F.3d at 1076.

11

California law were met by the evidence presented in petitioner's case and that those standards comply with constitutional requirements. (Id. at 17-20.)

After a review of the record, the court concludes that the evidence introduced at petitioner's civil commitment trial was sufficient to support the jury's verdict that petitioner met the definition of a sexually violent predator. In arguing to the contrary, petitioner relies partly on the fact that he received a relatively low score on the Static-99 test.[5] However, as described by the California Court of Appeal, the state's expert witnesses used those test results merely as a starting point, not as the sole determining factor. Further, as described by the California Court of Appeal, there were other significant factors supporting the jury's verdict, including petitioner's commission of uncharged offenses against several victims; his continuing to offend despite "police questioning, divorce, and incarceration;" the fact that he committed his sexual offenses against minors while involved in a relationship with an adult; petitioner's rationalization of his behavior; the fact that petitioner admitted "he has a problem with little girls;" and the concern raised by petitioner's failure to ever voluntarily seek treatment. (See Opinion at 7-8.) In short, there was substantial evidence from which a rational trier of fact could have found beyond a reasonable doubt that petitioner was a sexually violent predator, as defined under California law.[6]

Because there was substantial evidence presented at trial to support the jury's finding that petitioner was a sexually violent predator, as defined under California law, the state court's analysis of this claim is not "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 25 (2002). See also 28 U.S.C. § 2254(d)(1); Kirk v. Hunter, No. C 06-0071 CW, 2008 WL

---

[5] In addition, for the reasons described by the state appellate court, this court rejects petitioner's argument that there was "no proven methodology used by prosecution 'experts' to increase risk above S-99 score." (Am. Pet. at 5.)

[6] Since the evidence was sufficient to support the jury's finding under the "beyond a reasonable doubt" standard, it is clear that there was substantial evidence introduced at petitioner's trial to support the jury's finding that he was sexually violent predator when measured by the standard of more than a preponderance of the evidence but less than beyond a reasonable doubt, as required to satisfy due process under the Supreme Court's holding in Addington.

12

5000488, *4-5 (N.D. Cal. Nov. 21, 2008) (rejecting petitioner's claim that there was insufficient evidence supporting the trial court's SVP determination and finding the state court's resolution of the issue not to be unreasonable). Accordingly, petitioner is not entitled to habeas relief on this claim.

B. Evidentiary Error

Petitioner also claims that the trial court violated his due process rights when it "granted prosecution motion to exclude defense evidence that [petitioner] presented no risk of current danger to community because of outstanding warrant from South Dakota." (Am. Pet. at 5.)

The California Court of Appeal rejected petitioner's evidentiary error argument, reasoning as follows:

> Prior to trial, the court granted the People's motion in limine to exclude evidence that defendant was subject to an arrest warrant in South Dakota for completion of his suspended sentence. Defendant argued the evidence was admissible to prove that he posed no threat if released because he would immediately be arrested on the South Dakota matter and serve the remainder of his term there. The court rejected the argument, concluding that how a California court proceeds on a petition under the SVPA should be independent of what some other state might do with the defendant. Further, the court concluded it is not certain that defendant would be incarcerated in South Dakota.
>
> Defendant contends the exclusion of evidence was error. He cites as support People v. Superior Court (Ghilotti), supra, 27 Cal.4th 888, in which the court indicated that, in considering whether the defendant presents a substantial danger of reoffense, a medical evaluator may consider the possibility that the defendant will voluntarily accept treatment. (Id. at pp. 925-929.) The state high court explained that medical evaluators "may consider any factor which, in their professional judgment, is relevant to the ultimate issue whether the person is a substantial danger to reoffend if free in the community without any conditions, supervision, monitoring, or mandatory treatment in the Director's custody." (Id. at p. 927.)
>
> Defendant's reliance on Ghilotti is misplaced. The fact that medical evaluators may consider certain evidence does not mean that the jury may consider it. Medical experts are permitted to consider many things (e.g., hearsay evidence or evidence of

13

> uncharged offenses) that are not properly admissible at trial. Furthermore, <u>Ghilotti</u> explained that evaluators may consider any factor relevant to whether the defendant is likely to reoffend if free in the community without any restrictions. Whether defendant is subject to incarceration elsewhere has no bearing on whether he poses a danger if free in the community.
>
> At any rate, the trial court excluded the evidence on the basis of Evidence Code section 352. Evidence Code section 352 permits the exclusion of relevant evidence where "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A determination under Evidence Code section 352 is reviewed under an abuse of discretion standard. (<u>People v. Williams</u> (1997) 16 Cal.4th 153, 213.) "A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered." (<u>People v. Stewart</u> (1985) 171 Cal.App.3d 59, 65.)
>
> The trial court here could reasonably have concluded the probative value of the proffered evidence was outweighed by the probability of an undue consumption of time and the likelihood of confusing the issues. Even if we accept the premise of defendant's argument that the fact he is subject to incarceration elsewhere would negate his dangerousness to the public if released, defendant's proffered evidence did not establish that he would in fact be incarcerated in South Dakota. On the other hand, admission of the evidence would likely have led to a trial within a trial on whether defendant would indeed be incarcerated in South Dakota and how such temporary incarceration would impact the expert evaluations of defendant's dangerousness once he is released from South Dakota prison. Under these circumstances, the court did not abuse its discretion in excluding the evidence.

(Opinion at 10-12.)

Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief. <u>Estelle</u>, 502 U.S. at 67-68. Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. <u>Drayden v. White</u>, 232 F.3d 704, 710 (9th Cir. 2000); <u>Spivey v. Rocha</u>, 194 F.3d 971, 977-78 (9th Cir. 1999); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991). By analogy, criminal defendants have a

constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984); Webb v. Texas, 409 U.S. 95, 98 (1972).[7] However, the constitutional right to present a defense is not absolute. Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983). A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egeloff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)).

The conclusion of the state appellate court that petitioner's right to due process was not violated by the exclusion of testimony that petitioner was subject to an arrest warrant in another state is not contrary to or an unreasonable application of the federal due process principles discussed above. See Moses v. Payne, 543 F.3d 1090, 1103-05 (9th Cir. 2008) (exclusion of evidence offered by the defense was not contrary to clearly established federal law and did not have a substantial and injurious effect or influence in determining the jury's verdict). After a review of the record, this court is persuaded that the exclusion of this evidence did not render petitioner's civil commitment trial fundamentally unfair or violate his right to present a defense. Further, in light of the fact that petitioner's behavior while in prison would have no

---

[7] Although involuntary civil commitment is a significant deprivation of liberty requiring due process protections, civil commitment proceedings are not criminal prosecutions and the procedures required are not nearly as rigorous as for criminal trials or even juvenile proceedings. See Kansas v. Hendricks, 521 U.S. 346, 364-65, 370-71 (1997); Carty, 426 F.3d 1073-74; Hubbart v. Knapp, 379 F.3d 773, 780 (9th Cir. 2004) see also Addington v. Texas, 441 U.S. 418, 430-33 (1979).

bearing on the question whether he was likely to reoffend if free in the community, the exclusion of evidence regarding his arrest warrant could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

Of course, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). Petitioner has failed to carry his burden with respect to his claim of evidentiary error. Accordingly, he is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 15, 2009.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
huftile174.hc